liBROWN, Judge,
dissenting in part.
I disagree with the majority view that treble damages are not proper under La.R.S. 3:4278.1.
James Rhodes, an employee of Auger Timber Company, supervised a timber cutting operation on property in Union Parish owned by the Carroll family. The Carroll tract adjoined property owned by Rhodes’ aunt, Emma Long Rhodes. Disregarding an old fence line, the timber company crossed the boundary between the properties and cut trees on approximately three acres of Mrs. Rhodes’ property.
James Rhodes testified that because the property description he obtained was vague, he followed standard practice and made a physical inspection of the land. Rhodes looked first in the area he suspected was the boundary and found the old fence. Rhodes clearly knew that old fences usually, but not always, are boundaries. The condition of the old fence is irrelevant. As a professional in the timber industry, Rhodes should have investigated further.
La.R.S. 3:4278.1, following its amendment in 1992, provides in part:
C. Whoever violates the provisions of Subsection A in good faith shall be hable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees. (Emphasis added).
In Carroll v. International Paper Company, 94-302 (La.App.3d Cir. 11/02/94), 649 So.2d 474, writ denied, 94-2924 (La. 02/17/95), 650 So.2d 259, the court, noting that the cutting was not willful or intentional, but rather was caused by a mistake on defendants’ part, found:
In this case, the taking did occur across marked boundary lines and outside the designated cutting area. The contention of mistake by International Paper Company does not change that fact. Additionally, the record is clear that the circumstances surrounding the actions of International Paper | ^Company are such that it should have been aware it was on the wrong property....
It is incumbent upon the professionals in the timber industry to take the necessary steps to assure proper location in conjunction with cutting activities. International Paper Company has access to timber cruisers, surveyors, and other personnel whose obligation to the company and the public is to see that the right tract is cut. A mistake of this magnitude is exactly what the statute contemplated when it provided for treble damages. (Emphasis added).
Carroll, 649 So.2d at 478.
Carroll, supra, was decided under pre-amendment R.S. 3:4278; however, the 1992 amendment did not change the criteria set forth in Carroll. The Carroll court applied the “should have been aware” standard. The 1992 amendment actually expanded coverage by removing restrictive language that “the provisions of this Section shall apply only to” certain situations. The amendment did not, as stated by the majority, “further slacken” the “should have been aware” standard for treble damages as applied in the Carroll case.
In the instant case, Mrs. Rhodes had her timber thinned five years earlier; however, this thinning stopped short of her property line. Thomas Foster, a senior forest technician for International Paper, supervised the thinning. Foster stated that he found the old fence line but because the fence was down in places, he knew it would be difficult *677 to accurately run the entire line; however, he clearly recognized the old fence as the property boundary. Foster further testified that he painted a blue cutting line some distance back from the old fence because Mrs. Rhodes did not want the big trees near the property line cut.
Foster stated that it was his practice to get a legal description of the property from the tax assessor’s office and to then physically inspect the property to locate the boundary. When unable to locate the fines on his own, Foster would have the landowner point out the fines or he would look in the conveyance records. Foster stated that it was insufficient to cut timber relying upon a tax assessor’s ^description without speaking to the landowner.
James Rhodes, plaintiff’s nephew, supervised the timber harvest on the Carroll tract for his employer, Auger Timber Company. Rhodes stated that the property description he obtained from, the courthouse was vague. Rhodes made a physical inspection of the property and first found the old fence fine, which he described as “one strand of barbed wire nailed to some trees.” According to Rhodes, old fences are frequently found in the woods and do not always indicate ownership or boundary lines. This particular old fence, however, was found where Rhodes first looked for the boundary.
After finding the old fence, Rhodes also found a tree fine that corresponded to the area that Mrs. Rhodes had previously had thinned and assumed it was the boundary between the tracts. Rhodes acknowledged that he did not contact his aunt or the Car-rolls before cutting and that he did cut across the old fence fine which was the boundary between the properties.
In addition to Foster and James Rhodes, both plaintiff and her son, John Rhodes, testified to the existence of the old fence fine. They also indicated that this fence line was always considered the boundary between the properties. It was John Rhodes who discovered the trespass and wrongful cutting.
The issue is not how discernable or dilapidated the old fence was, but rather, once the fence was found, whether Rhodes, a professional in the timber industry, should have investigated further. After obtaining a vague property description, Rhodes inspected the property and found two possible boundaries between the adjoining tracts. Thus, Rhodes had notice that the boundary was questionable and as a timber professional, should have ascertained whether the old fence or the tree fine was the actual boundary between the properties. In this case, all James Rhodes had to do was ask his aunt, who lived just down the road, or his Uclients, the Carrolls. However, as in Carroll, swpra, defendants cut across a marked property fine, i.e., the old fence.
In many similar instances such a trespass would go undetected and did, in fact, go unnoticed by the elderly Mrs. Rhodes. Some time later, Mrs. Rhodes’ son saw the cut over property and asked first his mother and then his cousin about it. Only after such a trespass is discovered can an owner attempt to determine how much timber was wrongfully cut through the difficult process of counting the stumps and estimating size.
The circumstances in this case are more egregious than those in Carroll, supra, where the mistake was in misreading a marker. These defendants saw the old fence and were on notice of a possible boundary. A marker was not misread. If these defendants had any more information, such as hearsay concerning the boundary, they would have been in bad faith. Under the majority view, it is difficult to conceive of a good faith situation where treble damages could be awarded. Under these circumstances defendants should have asked the landowners, particularly in fight of the fact that Rhodes’ aunt resided in the area. A lesser duty would render the statute impotent. This mistake is exactly what the statute contemplated when it provided for treble damages.
For these reasons, I believe that plaintiff is entitled to treble damages and must disagree with the majority opinion.